No. 23-20449

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Crusader Gun Group, L.L.C.,

Plaintiff - Appellant

v.

Tanarra James, Director of Industry Operations of the Houston Field
Division of the Bureau of Alcohol, Tobacco, Firearms, and Explosives
("ATF")

Defendant - Appellee

On Appeal from the United States District Court
for the Southern District of Texas,
Houston Division, No. 4:22-cv-00906

## BRIEF OF APPELLEE

ALAMDAR S. HAMDANI
United States Attorney

MYRA SIDDIQUI
Assistant United States Attorney
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9600

JENNIE BASILE, Division Counsel
ROWENA SANTIAGO, Senior
Attorney
PETER MICKELSON, Senior
Attorney
Bureau of Alcohol, Tobacco,
Firearms and Explosives

# CERTIFICATE OF INTERESTED PERSONS

(1) No. 23-20449; *Crusader Gun Group, LLC v. Tanarra James, Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms, and Explosives*

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

a. **<u>Plaintiff-Appellant</u>**

Crusader Gun Group, LLC

b. **<u>Defendants-Appellee</u>**

Tanarra James, Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms, and Explosives

c. **<u>Counsel for Plaintiff-Appellant Crusader Gun Group, LLC</u>**

G.P. Matherne

d. **<u>Counsel for Defendant-Appellee Tanarra James, Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms, and Explosives</u>**

Myra Siddiqui, Assistant United States Attorney

Jennie Basile, Division Counsel
Rowena Santiago, Senior Attorney
Peter Mickelson, Senior Attorney
Bureau of Alcohol, Tobacco, Firearms and Explosives
Office of Chief Counsel

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney

Attorney of Record for
Defendant-Appellee Tanarra
James, Director of Industry
Operations, Bureau of Alcohol,
Tobacco, Firearms, and
Explosives

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(1) and 5th Cir. R. 28.2.3, Appellee Tanarra James, Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") states that the Court can decide the issues presented on the briefs and the record.

Appellant Crusader Gun Group, LLC ("Crusader") has requested oral argument. The United States respectfully submits that this appeal can be resolved by an application of the relevant statute and case law to the extensive factual record developed by ATF.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS...................................i

STATEMENT REGARDING ORAL ARGUMENT.............................iii

TABLE OF AUTHORITIES..................................................v

STATEMENT OF THE ISSUES ON APPEAL...................................1

INTRODUCTION ..........................................................1

STATEMENT OF THE CASE................................................2

    I.  Crusader applies for a federal firearms license...........................2

    II.  Three compliance investigations reveal thousands of GCA violations. ...................................................................4

    III. Crusader's license application is denied. ...................................6

    IV. Crusader files suit to challenge the denial of its FFL. ...............10

STANDARD OF REVIEW .................................................11

SUMMARY OF THE ARGUMENT ........................................12

ARGUMENT AND AUTHORITIES .......................................14

    I.  ATF was authorized to deny Crusader's license application based on Aronstein's willful violations of the GCA. .............................14

      A. ATF may deny a FFL if the applicant's responsible person has willfully violated the GCA. .......................................14

        i.  The case law overwhelmingly supports ATF's position.........15

        ii. Crusader's interpretation contradicts principles of statutory interpretation and leads to absurd results...........................19

      B. As the responsible person for the three prior entities, Aronstein was responsible for the myriad GCA violations........................23

      C. Tex-Products, High Standard Manufacturing, and Firearms International, operating under Aronstein's management and

supervision, willfully violated federal firearms laws and regulations....................................................................25

    i. Recordkeeping errors...............................................27

    ii. Unlawful possession of machineguns ...................31

    iii. Failure to serialize firearm frames.....................33

    iv. Failure to report firearms as missing .................36

II.  Crusader was not denied due process in the underlying administrative proceedings. ......................................38

III. Crusader's hearsay exhibit does not create a fact issue............43

CONCLUSION ......................................................................43

CERTIFICATE OF SERVICE ................................................45

CERTIFICATE OF COMPLIANCE........................................46

# TABLE OF AUTHORITIES

## Cases

*Al's Jewelry & Loan, Inc. v. United States,*
   103 F. 3d 128, 1996 WL 683528 (6th Cir. Nov. 22, 1996) ................... 16
*Am. Arms Int'l v. Herbert,*
   563 F.3d 78 (4th Cir. 2009)................................................................26
*Amend. Guns, LLC v. Bureau of Alcohol, Tobacco, Firearms, &*
   *Explosives,*
   No. 1:13-CV-01947-CL, 2014 WL 7051753 (D. Or. Dec. 12, 2014).18, 37
*Appalachian Res. Dev. Corp. v. McCabe,*
   387 F.3d 461 (6th Cir. 2004)..............................................................27
*Armalite v. Lambert,*
   544 F. 3d 644 (6th Cir. 2008)..............................................................26
*Armament Servs. Int'l v. Att'y Gen. United States,*
   760 F. App'x 114 (3d Cir. 2019)............................................... 12, 26, 30
*Armament Servs. Int'l, Inc. v. Yates,*
   No. CV 17-MC-10, 2017 WL 5886048 (E.D. Pa. Nov. 27, 2017) ..........39
*Arwady Hand Trucks Sales, Inc. v. Vander Werf,*
   507 F. Supp. 2d 754 (S.D. Tex. 2007) ...................................... 14, 26, 27
*Barany v. Van Haelst,*
   459 F. App'x 587 (9th Cir. 2011) .................................................. 10, 17
*Barany v. Van Haelst,*
   No. 09-253, 2010 WL 5071053 (E.D. Wash. Dec. 6, 2010) ...................17
*Borchardt Rifle Corp. v. Cook,*
   684 F. 3d 1037 (10th Cir. 2012)..........................................................26
*Curry v. Strain,*
   262 F. App'x 650 (5th Cir. 2008) .......................................................41
*DiMartino v. Buckles,*
   129 F. Supp. 2d 824 (D. Md. 2001).....................................................40
*Fairmont Cash Mgmt., LLC v. James,*
   858 F.3d 356 (5th Cir. 2017) ..........................................................9, 11
*Fin & Feather Sport Shop, Inc. v. U. S. Treasury Dep't, Internal*
   *Revenue Serv., Bureau of Alcohol, Tobacco & Firearms,*
   481 F. Supp. 800 (D. Neb. 1979)....................................................18, 38

*Fulkerson v. Sessions*,
  No. 17-5874, 2018 WL 3726278 (6th Cir. Mar. 23, 2008) ........ 17, 39, 40
*Gilbert v. Bangs*,
  481 F. App'x 52 (4th Cir. 2012) ................................... 10, 14, 17, 30, 42
*Gossard v. Fronczak*,
  206 F. Supp. 3d 1053 (D. Md. 2016) ................................................ 3, 15
*Guns Shop, Inc. v. Gonzales*,
  441 F. 3d 492 (7th Cir. 2006) ............................................................ 26
*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ........................................................................... 20
*Harrison v. U.S. ex rel. Dep't of Treasury*,
  No. CIV-04-100-SPS, 2006 WL 3257401 (E.D. Okla. Nov. 9, 2006) .... 40
*IBP, Inc. v. Alvarez*,
  546 U.S. 21 (2005) ............................................................................. 19
*Lewin v. Blumenthal*,
  590 F. 2d 268 (8th Cir. 1979) ............................................................ 26
*Lortz, Ltd. v. Gilbert*,
  451 F. App'x 503 (6th Cir. 2011) ....................................................... 16
*McLemore v. United States Treasury Dep't*,
  317 F. Supp. 1077 (N.D. Fla. 1970) ............................................ 18, 38, 39
*MEW Sporting Goods, LLC v. Johansen*,
  992 F. Supp. 2d 665 (N.D. W. Va. 2014) ................................... 3, 15, 20
*Trader Vic's Ltd. v. O'Neill*,
  169 F. Supp. 2d 957 (N.D. Ind. 2001) ............................................... 16
*Screws v. United States*,
  325 U.S. 91 (1945) ............................................................................. 25
*Shaffer v. Holder*,
  No. 1:09-0030, 2010 WL 1408829 (M.D. Tenn. Mar. 30, 2010) ........... 39
*Shawano Gun & Loan, LLC v. Hughes*,
  650 F.3d 1070 (7th Cir. 2011) ............................................................ 26
*Weaver v. Harris*,
  486 F. App'x (5th Cir. Aug. 22, 2012) .......................................... 11, 26
*Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and
  Explosives*,
  415 F. 3d 1274 (11th Cir. 2005) ......................................................... 26
*Withrow v. Larkin*,
  421 U.S. 35 (1975) ............................................................................. 40

*XVP Sports, LLC v. Bangs,*
　No. 2:11CV379, 2012 WL 4329263 (E.D. Va. Mar. 21, 2012) .... 3, 15, 21

**Statutes**

18 U.S.C. § 922(o) ................................................................. 31, 33
18 U.S.C. § 922(o)(2)(A) .............................................................. 31
18 U.S.C. § 923(c) ..................................................................... 2, 7
18 U.S.C. § 923(d)(1) ................................................................... 14
18 U.S.C. § 923(d)(1)(C) ........................................... 7, 9, 14, 17
18 U.S.C. § 923(e) ......................................................................... 6
18 U.S.C. § 923(f)(2) ..................................................................... 8
18 U.S.C. § 923(f)(3) ............................................................ 10, 11
18 U.S.C. § 923(g)(1)(A) ............................................................. 27
18 U.S.C. § 923(g)(6) .................................................................. 36
18 U.S.C. § 923(i) ........................................................................ 33
18 U.S.C. §§ 922(g) ............................................................. 22, 24

**Rules**

Fed. R. App. P. 28(a)(8)(A) ........................................................ 41
Fed. R. App. P. 32(a)(5) .............................................................. 46
Fed. R. App. P. 32(a)(6) .............................................................. 46
Fed. R. App. P. 32(a)(7)(B) ......................................................... 46
Fed. R. App. P. 32(f) ................................................................... 46
Fed. R. App. P. 34(a)(1) .............................................................. iii
Fed. R. Civ. P. 26 ....................................................................... 43

**Regulations**

27 C.F.R. § 478.123 ..................................................................... 28
27 C.F.R. § 478.123(a) ........................................................... 28, 36
27 C.F.R. § 478.123(b) ................................................................. 28
27 C.F.R. § 478.47(a) ................................................................. 2, 7
27 C.F.R. § 478.47(b) ................................................................... 14
27 C.F.R. § 478.47(b)(3) ..................................................... 7, 9, 14
27 C.F.R. § 478.74 ......................................................................... 8
27 C.F.R. § 478.92 ....................................................................... 34
27 C.F.R. § 478.92(a)(2) ........................................................ 33, 34
75 Fed. Reg. 48362-02 ................................................................. 40

## STATEMENT OF THE ISSUES ON APPEAL

1.    Whether the district court correctly determined that ATF was authorized to deny Crusader's application for a federal firearms license ("FFL") based on willful violations of the Gun Control Act ("GCA") attributable to Crusader's president and sole responsible person, Alan Aronstein.  (Appellant's Issues 1, 4-7)

2.    Whether the district court correctly rejected Crusader's constitutional claims that ATF failed to provide a fair administrative hearing and failed to produce alleged and unidentified exculpatory documents.  (Appellant's Issues 2-3)

## INTRODUCTION

The Court should affirm ATF's denial of Crusader's FFL.  A single willful violation of the GCA is sufficient to authorize the denial of a FFL application, and Crusader's responsible person has thousands of GCA violations from three previous companies. Courts across the country have consistently applied the federal firearms laws and regulations to preclude individuals from evading the consequences of prior GCA violations by applying for a FFL under a newly-created entity.  Crusader also alleges that "exculpatory documents" should have been produced but

has not identified any document that ATF has allegedly withheld. Regardless, because any one of the GCA violations is enough to warrant the denial of the FFL, the nearly 1,500-page administrative record, including an administrative hearing where Crusader was represented by counsel and able to present evidence and cross-examine witnesses, was more than enough to affirm the agency's decision. The Court should therefore affirm the district court's judgment.

## STATEMENT OF THE CASE

### I. Crusader applies for a federal firearms license.

ATF is the federal agency responsible for issuing federal firearms licenses ("FFL") to applicants who meet criteria set forth in the Gun Control Act ("GCA"). *See* 18 U.S.C. § 923(c); 27 C.F.R. § 478.47(a). Crusader is a Texas limited liability company doing business under the trade names "Interarms," "AMT," "Hi-Standard," "Firearms International," "High Standard," and "Crusader." ROA.1323. On November 20, 2020, Crusader filed an application with ATF for a FFL. ROA.1323-26.

In its license application, Crusader identified Alan Aronstein as its president and the sole responsible person in the company's retail

firearms business. ROA.1324. For GCA licensing purposes, the term "responsible person" means "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of [corporation, partnership, or association, insofar as they pertain to firearms." *E.g.*, *Gossard v. Fronczak*, 206 F. Supp. 3d 1053, 1061 (D. Md. 2016); *MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 671 (N.D. W. Va. 2014); *XVP Sports, LLC v. Bangs*, No. 2:11CV379, 2012 WL 4329263, at *1 (E.D. Va. Mar. 21, 2012), report and recommendation adopted, No. 2:11CV379, 2012 WL 4329258 (E.D. Va. Sept. 17, 2012).

On January 28, 2021, ATF initiated a routine qualification inspection to determine whether Crusader was eligible to receive a FFL. ROA.2648-56. The qualification inspection was conducted by ATF Industry Operations Investigator Elaine Mata in the Houston Field Division. ROA.2650. Early in the inspection, Investigator Mata found that Crusader's president, Aronstein, was the same responsible person associated with three former federal firearms licensees: Tex-Products, Inc. ("Tex-Products"), High Standard Manufacturing Co., Inc. ("High Standard Manufacturing"), and Firearms International, Inc. ("Firearms

International"). ROA.1370-71 (Firearms International application for license); ROA.1372-73 (High Standard application); ROA.1374-75 (Tex-Products application); ROA.1256 (email from Aronstein listing his companies); ROA.1361-69 (applications from prior years).

All three license applications listed the same business address at 10606 Hempstead Highway, Suite 116, Houston, Texas 77092. ROA.1370, 1372, 1374. On each application, Aronstein identified himself as the company president or trustee of the "Aronstein's Children's Trust," and the sole responsible person for the proposed firearms operations. ROA.1371, 1375. In connection with these applications, Aronstein signed firearms regulations checklists, affirming that the federal firearms regulations were explained to him and that he was responsible for ensuring that his firearms manufacturing business complied with those regulations. ROA.1398-400. Aronstein signed similar acknowledgments in 2008 and 2011, again affirming that the regulations had been explained to him. ROA.1401-02 (2008); ROA.1403-04 (2011).

## II. Three compliance investigations reveal thousands of GCA violations.

According to agency records, ATF inspected High Standard Manufacturing in 2008 and issued reports of recordkeeping violations to

Aronstein.  ROA.1406-07.  In 2009, ATF investigated Tex-Products and High Standard Manufacturing and again issued reports of recordkeeping violations to Aronstein.  ROA.1408-09.  In both 2008 and 2009, ATF warned Aronstein to take corrective action to resolve significant deficiencies in his recordkeeping practices.  ROA.1406-09.

In 2010, ATF conducted a third compliance inspection of Aronstein's companies.  ROA.2572-77 (Tex-Products and High Standard Manufacturing); ROA.1510-20 (Firearms International and High Standard Manufacturing).  Following an eight-month, on-site examination of firearms records and inventory, ATF again issued reports of violations to Aronstein, documenting thousands of instances in which Tex-Products and High Standard Manufacturing failed to comply with the federal firearms laws and regulations.  ROA.2572-87 (Tex-Products and High Standard Manufacturing); ROA.1510-20 (Firearms International); ROA.1857-66 (High Standard Manufacturing); ROA.2334-43 (Tex-Products and High Standard Manufacturing); ROA.2679-80 (ATF Industry Operations Investigator Hartman's testimony regarding inspection); ROA.2688-2711 (Hartman testimony regarding violations found).  These violations included more than 6,000

recordkeeping errors, failure to report the theft or loss of more than 200 firearms, failure to serialize 2,400 firearm frames, and the possession of unlawful machineguns. *See id.*

Based on the findings of the 2010 inspection and the history of warnings given to Aronstein, ATF issued a Notice of Revocation of License ("Notice of Revocation"), ATF E-Form 4500 (5300.4), to Tex-Products in 2011. ROA.2566-89. ATF is authorized to revoke a FFL due to willful violations of the GCA and its regulations. 18 U.S.C. § 923(e). In the Notice of Revocation issued to Tex-Products, ATF enumerated the federal firearms laws and regulations violated by Tex-Products, under the ownership and control of Aronstein. ROA.2567-71. In response, Tex-Products requested a hearing to challenge the Notice of Revocation. ROA.2590-92. However, before the hearing could be held, Tex-Products' business operations were terminated, and all three companies owned by Aronstein surrendered their federal firearms licenses to ATF. ROA.2593 (notice of hearing); ROA.2597-2600 (letter of surrender).

## III. Crusader's license application is denied.

ATF considered the matter of Aronstein's FFLs closed until November 2020, when Crusader filed an application for a new license,

listing Aronstein as its president and sole responsible person. ROA.1324.

ATF has the authority to deny a license application if the applicant does

not meet certain criteria. 18 U.S.C. § 923(c), (d)(1); 27 C.F.R. § 478.47(a),

(b). Among those criteria, the license applicant, including its responsible

persons, cannot have previous willful violations of the federal firearms

laws or regulations. 18 U.S.C. § 923(d)(1)(C); 27 C.F.R. § 478.47(b)(3).

Thus, in considering Crusader's license application, ATF necessarily took

into account Aronstein's history as the owner of three previously licensed

firearms businesses. In view of Aronstein's history of repeated GCA

violations, which resulted in the Notice of Revocation issued to Tex-

Products and the surrender of all three entities' licenses, ATF determined

that Crusader, as a company with Aronstein as its president and sole

responsible person, was not qualified under sections 923(d)(1)(C) and

478.47(b)(3) to receive a new FFL. ROA.1329-30.

Accordingly, on April 27, 2021, ATF issued a Notice to Deny

Application for License ("Notice to Deny"), ATF E-Form 5300.43 (4498),

to Crusader. ROA.1329-30. In the Notice to Deny, ATF indicated that

Crusader, operating under Aronstein's exclusive control, did not meet the

criteria for licensing. ROA.1330. Crusader timely requested a hearing to review the administrative action. ROA.1340.

A hearing was held in accordance with 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74. ROA.2610-2809. ATF Director of Industry Operations ("DIO") Tanarra James presided over the hearing, and ATF Division Counsel Jennie Basile represented the Government. ROA.2610-11, 2614, 2616. ATF Area Supervisor Alicia Flowers, Industry Operations Investigator Jennifer Hartman, and Special Agent Graham Wright testified for ATF. ROA.2612, 2617-2678, 2678-2792, 2792-2803. ATF offered 61 documentary exhibits, which were incorporated into the administrative record of the proceeding. ROA.2625. Crusader was represented by attorney G.P. Matherne, accompanied by Aronstein. ROA.2615. Crusader offered no exhibits and presented no witnesses, but attorney Matherne cross-examined the ATF witnesses. ROA.2617, 2669 (Flowers); ROA.2678, 2773 (Hartman); ROA.2792, 2800 (Wright).

On January 13, 2022, ATF issued a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License ("Final Notice of Denial"), ATF Form 5300.13, to Crusader. ROA.2602-09. The Final Notice of Denial set forth ATF's findings, conclusions, and

decision that Crusader's president and responsible person, Aronstein, had willfully violated the federal firearms laws and regulations while operating under his formerly licensed company, Tex-Products, as discovered in 2010. ROA.2604-07. ATF concluded that the 2010 violations were willful because Aronstein, who had been associated with licensed firearms businesses for decades, understood his regulatory obligations but was plainly indifferent to those obligations. ROA.2605. In reaching this conclusion, ATF relied on *Fairmont Cash Mgmt., LLC v. James*, in which this Court defined willfulness, in the GCA context, as a licensee's purposeful disregard or plain indifference to known legal obligations, shown by evidence that "the licensee has been informed of the regulations, warned of violations, and continually violates those requirements." ROA.2606 (citing 858 F.3d 356, 362 (5th Cir. 2017)).

Concluding that Aronstein was responsible for the willful violations committed under the federal firearms license held by Tex-Products, ATF determined that Aronstein and his company, Crusader, were not qualified to receive a new license under 18 U.S.C. § 923(d)(1)(C) and 27 C.F.R. § 478.47(b)(3). ROA.2606. This decision relied on the well-established principle that a responsible person is accountable for the

willful violations committed by his federally licensed firearms business, and that a history of willful noncompliance with the GCA will disqualify such person from receiving a new FFL, even when that license is sought under the pretext of a newly-formed business entity. *See, e.g., Gilbert v. Bangs*, 481 F. App'x 52, 54-55 (4th Cir. 2012)  (affirming denial of application for individual FFL based on applicant's prior GCA violations as owner and responsible person for separate entity); *Barany v. Van Haelst*, 459 F. App'x 587, 588 (9th Cir. 2011) (affirming denial of FFL where individual "was applying for an FFL in order to revive [prior store's] former gun department under another business name and thus to evade the consequences of the revocation of [prior store's] FFL").

## IV.  Crusader files suit to challenge the denial of its FFL.

On March 21, 2022, Crusader filed a petition in federal district court for *de novo* judicial review of the denial of its application for a FFL pursuant to 18 U.S.C. § 923(f)(3) and amended its complaint on February 15, 2023.  ROA.8, 437.  Crusader served discovery requests on February 16, 2023, and the United States filed the 1,480-page administrative record on March 16, 2023.  ROA.4, 1307-2813.  On April 13, 2023, the district court stayed discovery beyond this administrative record pending

resolution of the United States' Motion for Summary Judgment, filed on March 28, 2023. ROA.991. On April 18, 2023, Crusader filed its Cross Motion for Summary Judgment. ROA.1020.

On August 17, 2023, the district court issued its Memorandum Opinion and Order, granting the United States' Motion for Summary Judgment, denying Crusader's Cross Motion for Summary Judgment, and affirming ATF's decision to deny Crusader's application for a FFL. ROA.1292-1302. The district court issued its Final Judgment on the same date. ROA.1303. On September 14, 2023, Crusader filed its Notice of Appeal. ROA.1304.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*, applying the same standard as the district court. *Fairmont Cash Mgmt.*, 858 F.3d at 360. At the district court level, the denial of an application for a FFL is subject to *de novo* judicial review. 18 U.S.C. § 923(f)(3). The scope of this review is limited to the singular question of whether the denial was authorized under the law. *Weaver v. Harris*, 486 F. App'x at 503, 505 (5th Cir. Aug. 22, 2012). In a Section 923(f)(3) proceeding, summary judgment is "appropriate if no genuine issue of material fact

exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision." *Armament Servs. Int'l v. Att'y Gen. United States*, 760 F. App'x 114, 118 (3d Cir. 2019) (internal citations omitted).

## SUMMARY OF THE ARGUMENT

ATF was authorized under the GCA to deny Crusader's application for a FFL. ATF can deny a license to an applicant who has even *one* willful violation of the GCA. In the case of a corporate applicant, ATF may deny the application if the willful violations are attributable to the applicant's responsible person. Here, Crusader's president and sole responsible person, Alan Aronstein, has a long history of overwhelming noncompliance with the GCA. Between 2000 and 2010, Aronstein violated the GCA in thousands of instances while operating licenses held by Tex-Products, High Standard Manufacturing, and Firearms International. Even after signing multiple acknowledgments of his obligations under federal firearms statutes and regulations and acknowledging receipt of the required corrections in the 2008 and 2009 Reports of Violations, Aronstein continued to violate the GCA across three separate businesses into 2010. Based on this extensive record,

Aronstein is not eligible to obtain a new license, either in his own name or under a new business entity. With Aronstein as its president and sole responsible person, Crusader is therefore not eligible for a FFL under the GCA.

Notably, Crusader's brief does not rebut ATF's finding of recordkeeping violations. Because there is no dispute as to these thousands of violations by Crusader's responsible person, the agency's final decision can be affirmed on this basis alone.

Additionally, the district court appropriately dismissed Crusader's due process allegations that ATF failed to provide a fair hearing on the denial of Crusader's license application and failed to produce alleged—yet unidentified—exculpatory documents. Courts have repeatedly held that ATF's administrative hearing procedures satisfy due process. Crusader received notice of the proposed licensing action and was represented by counsel at the hearing. Crusader further had the opportunity to produce its own witnesses, cross examine ATF's witnesses, and present evidence. And Crusader has not identified any responsive documents that have not been produced by ATF, much less documents necessary to supplement the voluminous administrative record. Again,

ATF need only prove a single violation of the GCA to warrant its Final Notice of Denial, and the record establishes thousands of violations by Crusader's responsible person, as explained below.

## ARGUMENT AND AUTHORITIES

### I. ATF was authorized to deny Crusader's license application based on Aronstein's willful violations of the GCA.[1]

#### A. ATF may deny a FFL if the applicant's responsible person has willfully violated the GCA.

ATF may deny an application for a FFL if the applicant does not meet the requirements to receive a license under 18 U.S.C. § 923(d)(1) and 27 C.F.R. § 478.47(b). Among other things, the applicant cannot have prior willful violations of the federal firearms laws and regulations. 18 U.S.C. § 923(d)(1)(C); *see also* 27 C.F.R. § 478.47(b)(3). Section 923(d)(1)(C) provides that "any application "shall be approved if . . . the applicant has not willfully violated any of the provisions of [Title 18, Chapter 44] or the regulations issued thereunder." A single willful violation of the GCA is sufficient to authorize the denial of a FFL application. *Gilbert v. Bangs*, 481 F. App'x 52, 53 (4th Cir. 2012); *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 763 (S.D.

---

[1] This section addresses Issues 1 and 4 in Appellant's Brief.

Tex. 2007) (same).  For entities, this rule extends to the applicant's responsible persons, or those individuals with the power to direct the management of the applicant's firearms-related business activities, as explained below.

### i. *The case law overwhelmingly supports ATF's position.*

Courts have consistently upheld the denial of FFLs when the applicant is a previously-revoked license-holder, reconstituted under a new business entity, but comprised of the same responsible individual. For GCA licensing purposes, the term "responsible person" means "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of [corporation, partnership, or association, insofar as they pertain to firearms." *E.g.*, *Gossard v. Fronczak*, 206 F. Supp. 3d. 1053, 1061 (D. Md. 2016); *MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 671 (N.D. W. Va. 2014); *XVP Sports, LLC v. Bangs*, No. 2:11CV379, 2012 WL 4329263, at *1 (E.D. Va. Mar. 21, 2012), report and recommendation adopted, No. 2:11CV379, 2012 WL 4329258 (E.D. Va. Sept. 17, 2012).

For example, in *Trader Vic's Ltd. v. O'Neill*, the district court upheld ATF's denial of a FFL to Trader Vic's Ltd. because the company's

owner, Victor Reid, was responsible for willful GCA violations at his former company, Midwest Ordinance, Inc. 169 F. Supp. 2d 957, 959-65 (N.D. Ind. 2001). ATF then denied a FFL to a third company formed by Reid, Lortz Ltd., for the same reason that Reid was identified as a manager with the company. *See Lortz, Ltd. v. Gilbert*, 451 F. App'x 503, 504 (6th Cir. 2011). The Sixth Circuit affirmed the denial because Reid had willfully violated the GCA and, as manager, was now the "applicant" for purposes of Lortz Ltd.'s license application, disqualifying the company for a FFL under section 923(d)(1)(C). *See Lortz*, 451 F. App'x at 504.

ATF's denial of a FFL to a newly-formed entity was affirmed under similar grounds in *Al's Jewelry & Loan, Inc. v. United States*. In that case, Al's Loan Office, Inc. had an extensive history of GCA violations, resulting in ATF revoking the company's firearm license. 103 F. 3d 128, 1996 WL 683528, **1, 4 (6th Cir. Nov. 22, 1996). Four years later, Al's Jewelry and Loan, Inc. applied for a new FFL. *Id*. Although the business had reincorporated and changed its name, its management remained the same. *Id*. at *1. ATF therefore denied the license application, citing the prior willful violations of Al's Loan Office, Inc. *Id*. The district court and the Sixth Circuit upheld the denial on *de novo* review, observing that

"federal courts have uniformly upheld ATF's denial of firearms licenses to those applicants who have willfully violated the federal gun control laws," and concluded that "[b]ecause it is undisputed that Appellant willfully violated the federal gun control laws and regulations, and because there was ample evidence of Appellant's failure to institute satisfactory corrective measures to prevent such violations, we hold that ATF properly denied its application for a license." *Id.* at *4; *see also Fulkerson v. Sessions*, No. 17-5874, 2018 WL 3726278, **1-3 (6th Cir. Mar. 23, 2008) (affirming denial of FFL to new entity due to prior GCA violations of individual applying for license).[2]

In nearly 50 pages of briefing, Crusader does not cite a single case that has found that an individual's prior GCA violations do not carry over when the individual applies for a FFL for a newly-created entity. Nor does Crusader provide any authority for its argument that violations of

---

[2] In a similar line of cases, courts have upheld the denial of license applications filed by individuals who had owned and managed formerly revoked licensees and who later sought new licenses as a sole proprietors, operating under new business names. *See Gilbert*, 481 F. App'x at 54; *Barany v. Van Haelst*, No. 09-253, 2010 WL 5071053, **6-7 (E.D. Wash. Dec. 6, 2010), *aff'd* 459 F. App'x 587, 588 (9th Cir. 2011) ("Barany was applying for an FFL in order to revive the General Store's former gun department under another business name and thus to evade the consequences of the revocation of the General Store's FFL. Under these circumstances, ATF was authorized under 18 U.S.C. § 923(d)(1)(C) to deny his FFL application based on the willful violations committed by the General Store, Inc.").

an entity cannot be imputed to the responsible person or individual in control. *Cf. 2nd Amend. Guns, LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 1:13-CV-01947-CL, 2014 WL 7051753, at *7 (D. Or. Dec. 12, 2014) ("There is no reasonable question that 2nd Amendment Guns' acts are reasonably imputed to its officers and vice versa. The company, acting through its officers, willfully violated the Act and all 'responsible persons' named on 2nd Amendment Guns' license are personally accountable for those violations."); *Fin & Feather Sport Shop, Inc. v. U. S. Treasury Dep't, Internal Revenue Serv., Bureau of Alcohol, Tobacco & Firearms*, 481 F. Supp. 800, 805-06 (D. Neb. 1979) (licensee and corporate officer were accountable for recordkeeping errors of store manager because licensee and corporate officer were ultimately responsible for employees' actions); *McLemore v. United States Treasury Dep't*, 317 F. Supp. 1077, 1079 (N.D. Fla. 1970) (FFL licensee and company owner was responsible for violations of the GCA committed by agents and employees).

Crusader therefore asks this Court to overrule decades of precedent and create a new reading the GCA. Instead, this Court

should follow well-established precedent and affirm the district court's judgment in ATF's favor.

### ii. *Crusader's interpretation contradicts principles of statutory interpretation and leads to absurd results.*

In addition to unanimous case law, ATF's position is supported by well-established conventions of statutory interpretation. First, reading section 923(d)(1)(C) in context, the term "applicant" cannot reasonably be construed to exclude a corporate applicant's responsible persons. In the parenthetical language of section 923(d)(1)(B), Congress defined the term "applicant" to include, in the case of a corporation, partnership, or association, "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association." Though this parenthetical language is not repeated every time the term "applicant" appears in section 923(d)(1), the term has the same scope and meaning throughout the statute, including in subsection 923(d)(1)(C).

Identical words used in different parts of the same statute are generally presumed to have the same meaning. *See, e.g., IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (referring to this principle as "the normal

rule of statutory interpretation"); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995) (referring to "'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'").  Applying this principle, the statute should be construed as Congress defining the term "applicant" in section 923(d)(1)(B) by including the parenthetical language and thereafter intending to rely upon the same meaning throughout the statute.  *See MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 672 (N.D. W. Va. 2014), aff'd, 594 F. App'x 143 (4th Cir. 2015) ("[a]n equally reasonable construction of Section 923(d)(1) is that Congress defined the term 'applicant' by including the parenthetical language in the statute's first mention of 'applicant' which addressed the issue of corporate entities, and thereafter intended to rely upon the same meaning for the defined term.").  Thus, in delineating all the qualifications for GCA licensure in section 923(d)(1), Congress intended the requirements for an "applicant" to apply to individuals who control corporations and similar entities seeking FFLs.

Emphasizing this point, the district court noted as an example that while another provision of the GCA similarly omits the parenthetical

language of section 923(d)(1)(B) from the term "applicant," that section clearly applies to individuals responsible for federally licensed firearms businesses. ROA.1300. Section 923(d)(1)(A) requires a qualified applicant to be at least 21 years of age. As the district court observed, "it is difficult to imagine why" Congress would intend to mandate that a business entity must have existed for at least 21 years in order to qualify for a FFL. ROA.1300. A more reasonable interpretation is that Congress intended the age requirement, and all requirements for "applicants," to apply to individuals, including those responsible for running corporations that hold such licenses.

Second, defining the term "applicant" in section 921(d)(1)(C) to exclude responsible persons would abrogate the fundamental purpose of GCA licensing, which is to ensure that firearms businesses, which are run by individuals, remain in compliance with federal firearms laws and regulations. *See XVP Sports, LLC v. Bangs*, No. 2:11CV379, 2012 WL 4329258, at *7 ("Congress passed the Gun Control Act to regulate access and distribution of firearms. The principal agent of federal enforcement of the Act is the licensed dealer."). The authority to deny or revoke a FFL is the agency's principal tool for enforcing the laws and regulations

governing the conduct of firearms businesses. Crusader's interpretation would produce an absurd result: the owners and officers of a firearms business could avoid the consequences of willful violations of the GCA by simply reincorporating and obtaining a new license every time a FFL is revoked. As noted by the district court, "Crusader's view would gut the entire federal firearm licensing scheme. . . leaving ATF to play whack-a-mole with violators of the GCA." ROA.1300. Under this reasoning, the laws and regulations that govern the conduct of firearms businesses would be wholly ineffective, as ATF would have no recourse against licensees that habitually violate the GCA by creating new entities. Congress cannot have intended this result.

In addition, Crusader argues without support that the exclusive criteria for determining the eligibility of a corporate applicant's responsible person is the prohibition from transporting, shipping, or receiving firearms under 18 U.S.C. §§ 922(g) and (n). Appellant's Br. at 17-18, 34-39. There is no language in subsections (g) and (n) indicating these are meant to be the exclusive requirements for obtaining a FFL. This interpretation is nonsensical and ignores the remaining provisions

of the GCA that contain detailed and specific requirements to obtain and maintain a FFL.

Crusader thus seeks to foreclose ATF from considering Aronstein's record of years of legal and regulatory violations by arguing that ATF can only consider the compliance history of the newly incorporated company—in other words, a compliance history that does not even exist. As shown by the case law, principles of statutory interpretation, and the need to avoid absurd results, the Court should affirm ATF's finding that Aronstein's history of willful violations disqualifies him and his company from holding a FFL.

### B. As the responsible person for the three prior entities, Aronstein was responsible for the myriad GCA violations.

There is no straight-faced dispute that Aronstein was the responsible person or the individual in control of Tex-Products, High Standard Manufacturing, and Firearms International. Aronstein owned Tex-Products, served as its president, and was identified as the company's sole responsible person or owner in its licensing applications and renewals. ROA.1374-75, 1381-82, 1393-96. And there is overwhelming evidence that Aronstein was involved in the day-to-day

supervision of Tex-Products and had control over the company's firearms business activities. During the 2010 inspection of Tex-Products, Aronstein represented that he was responsible for managing the firearms business, and ATF personnel understood that Aronstein was the person to talk to when issues arose during the inspection. ROA.2682. In addition, Aronstein signed the acknowledgements of firearms regulations, agreeing that he was "required to be familiar with and comply with ALL Federal firearms laws and regulations." ROA.1398-1404 (signed acknowledgements); ROA.2650-2656 (Area Supervisor Flowers testimony explaining that ATF explained firearms laws to Aronstein prior to his signature of acknowledgements).

On numerous occasions, Aronstein represented Tex-Products, High Standard Manufacturing, and Firearms International at proceedings with ATF, including in post-inspection closing conferences, and signing to acknowledge receipt of ATF's Reports of Violations. ROA.1407, 1409, 1520, 1800, 1866, 2343. Aronstein was therefore aware that his companies were engaging in recordkeeping and other violations of the GCA, as shown by his signatures on the Reports of Violations. *Id.* Accordingly, Aronstein is accountable for the willful GCA violations of

Tex-Products, High Standard Manufacturing, and Firearms International, and ATF's denial of Crusader's FFL should be affirmed based on this record. Although Crusader challenges certain findings of violations discussed below, its brief does not challenge the findings of over 2,400 recordkeeping violations by these entities. Therefore, because Crusader concedes that Aronstein's companies violated the GCA's recordkeeping requirements, ATF's denial of Crusader's FFL can be affirmed without further inquiry.

### C. Tex-Products, High Standard Manufacturing, and Firearms International, operating under Aronstein's management and supervision, willfully violated federal firearms laws and regulations.

Crusader improperly relies on a Supreme Court case interpreting the term "willful" in the police misconduct context, *Screws v. United States*, 325 U.S. 91, 92 (1945), ignoring the fact that courts across the country have already defined "willful" for purposes of the GCA provisions at issue in this case. Indeed, the Supreme Court in *Screws* explained "[w]e recently pointed out that 'willful' is a word 'of many meanings, its construction often being influenced by its context." *Id.* at 101. For purposes of the GCA and to prove that a firearms dealer "willfully" violated the law, ATF "must show that the dealer either intentionally and

knowingly violated its obligations or was recklessly or plainly indifferent despite the dealer's awareness of the law's requirements." *Weaver v. Harris*, 486 F. App'x 503, 505 (5th Cir. 2012); *see also Armament Servs. Int'l Inc. v. Att'y Gen. United States*, 760 F. App'x 114, 118 (3d Cir. 2019) ("A violation of the Gun Control Act is willful where the licensee: (1) knew of his legal obligation under the Gun Control Act, and (2) either purposefully disregarded or was plainly indifferent to its requirements."); *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 83 (4th Cir. 2009) (same); *Armalite v. Lambert*, 544 F. 3d 644, 647 (6th Cir. 2008) (same); *Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1077 (7th Cir. 2011) (same); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives,* 415 F. 3d 1274, 1277 (11th Cir. 2005) (same); *Borchardt Rifle Corp. v. Cook*, 684 F. 3d 1037, 1043 (10th Cir. 2012) ("[T]he willfulness requirement of 18 U.S.C. § 923(e) is met by plain indifference toward known legal obligations.").

Evidence of a "bad purpose" or "evil motive" on the part of the licensee is not required. *Arwady*, 507 F. Supp. 2d at 761; *see also Article II Guns Shop, Inc. v. Gonzales*, 441 F. 3d 492, 497 (7th Cir. 2006); *Willingham Sports*, 415 F. 3d at 1276-77; *Lewin v. Blumenthal*, 590 F. 2d

268, 269 (8th Cir. 1979). Where the evidence demonstrates that the licensee "understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her licensee can be . . . revoked on the basis that the dealer 'willfully' violated the GCA." *Arwady*, 507 F. Supp. 2d at 762 (quoting *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004)).

The record clearly reflects the thousands of willful GCA violations that occurred in the firearms manufacturing operation of Aronstein's three companies, Tex-Products, High Standard Manufacturing, and Firearms International, and are listed in ATF's Final Notice of Denial to Crusader. *See* ROA.2602-09.

### i. *Recordkeeping Errors*

Crusader notably does not rebut any of ATF's findings as to the recordkeeping violations of Aronstein's three former companies. For the sake of comprehensiveness, these violations are addressed here. In the Final Notice of Denial issued to Crusader, ATF found that Tex-Products, High Standard Manufacturing, and Firearms International willfully failed to timely or accurately record the acquisition and disposition ("A&D") of firearms in more than 6,000 instances, in violation of 18

U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.123.  ROA.2605-06.  The statute and corresponding regulation require federal firearms licensees to record the manufacture, acquisition, and disposition of firearms within certain time frames and in a prescribed format.  *See, e.g.*, 27 C.F.R. § 478.123(a) (listing information required to be recorded within seven day of acquisition); *id*. § 478.123(b) (requiring each licensed manufacturer to maintain record of firearms disposed of to another licensee within seven days of transaction); *id*. § 478.124(d)[3] (required each licensed manufacturer to maintain separate records of sale or other dispositions made of firearms to nonlicensees).

At the administrative hearing, ATF offered dozens of exhibits and the testimony of an ATF investigator showing that Aronstein's companies:

(1) failed to record the acquisition of approximately 2,400 hundred pistol frames, *see* ROA.1599-1620, 2413-2543; *see also* ROA.2718-25, 2740-46 (Hartman testimony);

---

[3] Effective August 24, 2022, the regulation setting forth the requirements for recording the disposition of firearms by a licensed manufacturer to nonlicensees is now contained in 27 C.F.R. § 478.123(b).

(2) failed to record the acquisition of firearms transferred between companies (a repeat violation from the 2009 inspection and report of violations, ROA.1408-09), ROA.1745-47, 2124-26, 2355-69; *see also* ROA.2725-26 (Hartman testimony);

(3) failed to enter complete information in their A&D records, e.g., firearms manufacturers, firearms identification information, serial numbers, licensees from whom firearms were acquired, and dates of acquisition (a repeat violation from the 2008 and 2009 inspections and reports of violations, ROA.1406-09), ROA.1521-96, 1621-27, 1635-41, 1740-92, 1795-98, 1957-65, 2019-2123, 2344-54; *see also* ROA.2726-33 (Hartman testimony);

(4) recorded acquisitions of firearms not in their inventories, ROA.1949-56; *see also* ROA.2733-35 (Hartman testimony);

(5) failed to record firearms dispositions or recorded incorrect disposition information (a repeat violation from the 2008 inspection and report of violations, ROA.1406-07), ROA.1413-28, 1436-47, 1799-1856, 1902-20, 2134-2299, 2370-73, 2382-2404; *see also* ROA.2746-51, 2755-64 (Hartman testimony); and

(6) improperly recorded dispositions of firearms between the companies, ROA.1429-35, 2300-14, 2374-81, 2405-06; *see also* ROA.2751-53 (Hartman testimony).

Any one of these violations provided an independent basis to deny Crusader's license. *See Gilbert v. Bangs*, 481 F. App'x 52, 53 (4th Cir. 2012) ("A single willful violation of the Act is sufficient to authorize the denial of an application for a federal firearms license.").

As to the willfulness requirement, Aronstein was both aware of the GCA's requirements and disregarded or showed indifference to these requirements. *See Armament Servs. Int'l*, 760 F. App'x at 118 ("A violation of the Gun Control Act is willful where the licensee: (1) knew of his legal obligation under the Gun Control Act, and (2) either purposefully disregarded or was plainly indifferent to its requirements."). Prior to the 2010 inspection, Aronstein was instructed in the A&D recordkeeping requirements on several occasions. ROA.1398-1404. Additionally, ATF notified Aronstein of required corrective actions when recordkeeping violations were found in his bound books in 2008 and 2009, and Aronstein signed and acknowledged receipt of such notices. ROA.1406-09. Nevertheless, the 2010 investigation revealed repeat

recordkeeping violations from the 2008 and 2009 inspections as listed above in listed items 2, 3, and 5. Aronstein thus willfully violated the GCA, warranting denial of Crusader's FFL application.

### ii. *Unlawful Possession of Machineguns*[4]

ATF also found that Aronstein "willfully violated the GCA by knowingly and unlawfully possessing machineguns in violation of 18 U.S.C. § 922(o)." ROA.2605. The statute prohibits possession of a machinegun unless transferred or possessed "by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof." 18 U.S.C. § 922(o)(2)(A). ATF investigators found that Tex-Products had in its inventory eight Colt M-16 machineguns from Century International, which is not a United States department or agency, and the machineguns were still unlawfully possessed at the business premises. ROA.2568. At the hearing, ATF introduced as exhibits the bound book acquisition entries showing that these machineguns were acquired by Tex-Products from Century International on April 10, 2009 (ROA.2315-16), a photograph of the machineguns in Tex-Products inventory at the time of

---

[4] This subsection addresses Issue 6 in Appellant's Brief.

the 2010 inspection (ROA.2557), the Notice of Abandonment of the machineguns signed by Aronstein on February 14, 2011 (ROA.2564), and the testimony of ATF Investigator Hartman (ROA.2678, 2767-68) and ATF Special Agent Wright (ROA.2792-96) regarding ATF's discovery of the machineguns and the determination that they were being possessed unlawfully.

Crusader argues that the machineguns were lawfully possessed because they were acquired under a contract with the United States Government. Appellant's Br. at 45-46. Crusader has yet to produce any documentation to support this claim. Instead, Crusader cites to two documents with seemingly unrelated entities: (1) a contract between Lockheed Martin and FedSys, purportedly in support of a Department of Defense program, ROA.1236-72, and (2) an invoice or order form between Century International and High Standard, ROA.1273. There is no explanation of the connection between these documents involving completely separate pairs of entities, or how these documents demonstrate that Tex-Products acquired the machineguns on behalf of the United States government. Indeed, it is unclear how Aronstein could

have been fulfilling a U.S. government contract with machineguns still in Tex-Products' inventory in 2011 and which he later abandoned to ATF.

Crusader's other arguments regarding the machineguns are similarly unavailing. Because Crusader has failed to create a fact issue as to whether the machineguns were possessed by or under the authority of the United States, the discussion of whether the machineguns are properly characterized as M4s or M16s (Appellant's Br. at 43) is irrelevant; either way, these machineguns were not subject to the statutory exception. Moreover, even if the machineguns were possessed by High Standard Manufacturing Company instead of Tex-Products Inc.—which is not true—the point remains that Aronstein was the responsible person of both companies, as reflected by the fact that he signed the Notice of Abandonment of these machineguns. ROA.2564. The record therefore demonstrates that Aronstein willfully possessed these machineguns in violation of 18 U.S.C. § 922(o).

### iii.   *Failure to Serialize Firearm Frames*[5]

ATF found that Tex-Products willfully failed to serialize 2,400 firearms in violation of 18 U.S.C. § 923(i) and 27 C.F.R. § 478.92(a)(2).

---

[5] This subsection addresses Issue 5 in Appellant's Brief.

ROA.2605.  Section 923(i) provides "licensed [firearms] manufacturers shall identify by means of a serial number engraved or cast on the receiver or frame of the weapon . . . each firearm imported or manufactured by such importer or manufacturer."  The same requirement to serialize firearms is set forth in 27 C.F.R. § 478.92.  The version of the regulation in effect in 2011 further provided that "[a] firearm frame or receiver that is not a component part of a complete weapon at the time it is sold, shipped, or otherwise disposed of . . . must be identified as required by this section."  27 C.F.R. § 478.92(a)(2).

During the 2010 inspection, ATF investigators discovered approximately 2,400 pistol frames that Aronstein had acquired but failed to serialize.  Aronstein, through Crusader Gun Company, purchased the firearms in a bank foreclosure on April 10, 2004.  ROA.2678, 2736.  Crusader Gun Company did not hold a FFL, and so transferred the firearms to Tex-Products, which then transferred the firearms to Firearms International.  ROA.2737-2738.  The firearms were stored in boxes at Aronstein's business premises when ATF began its inspection in 2010.  ROA.2555-56, 2558-59 (photos); ROA.2738-40 (testimony explaining photos).  None of the firearms were serialized.  ROA.2738-40.

During the hearing, ATF played an audio recording of a November 16, 2010 discussion between Special Agent Wright and Aronstein, in which Aronstein acknowledged that the frames were firearms, that his companies were using them to manufacture completed pistols, and that he had begun to serialize the frames. ROA.2565, 2798-2800 (Wright testimony identifying voices in recording and explaining conversation with Aronstein).

Crusader does not dispute that the frames were firearms or that they were required to be serialized. Instead, Crusader directly contradicts the record by arguing that Tex-Products was not obligated to serialize the firearms because Tex-Products did not manufacture or import the firearms. Appellant's Br. at 42. Yet the pistol frames acquired by and transferred between Aronstein's companies were intended to be used in the manufacture of complete firearms. ROA.2565 (audio recording in which Aronstein acknowledged that the frames were firearms, that his companies were using them to manufacture completed pistols, and that he had begun to serialize the frames); ROA.2798-2800 (Wright testimony regarding recording). Because Tex-Products was using the frames to manufacture firearms and the frames were not

component parts of complete weapons at the time of purchase or transfer, Tex-Products was required to serialize the frames before transferring them to Firearms International, in accordance with section 478.92(a)(2).

Further, because Tex-Products had brought the pistol frames into its inventory, Tex-Products was required to record the acquisition of the frames, *including their serial numbers*, in its A&D record within seven days of acquisition, and therefore the frames, by necessity, were required to be serialized by Tex-Products within that same time frame. *See* 27 C.F.R. § 478.123(a). Instead, Tex-Products took the pistol frames into its inventory and then disposed of the frames to Firearms International without ever recording their acquisition or serializing them. Tex-Products, under Aronstein's control, thus violated requirements for serializing firearm frames in approximately 2,400 instances.

### iv.    *Failure to Report Firearms as Missing*[6]

ATF further found that Aronstein failed to report more than 200 firearms as stolen or missing within 48 hours of the theft or loss, in violation of 18 U.S.C. § 923(g)(6). ROA.2605. At the administrative hearing, ATF Investigator Hartman testified that Aronstein was aware

---

[6] This subsection addresses Issue 7 in Appellant's Brief.

of the requirement to report missing firearms to ATF (ROA.2770 (referencing ROA.1449-67)), and ATF offered examples of theft/loss reports that Aronstein had filed in the past. ROA.2768-71 (testimony); ROA.1449-70, 1921-41, 2317-21 (exhibits referenced in and supporting testimony).[7]

Crusader mistakenly suggests that there is no evidence that Aronstein was the one failing to report the missing firearms. Appellant's Br. at 47-48. Yet the past firearms theft/loss reports filed by the companies were in fact prepared and signed by Aronstein in the box for "Signature of Licensee". ROA.1449, 1452, 1931, 1936-37. And Aronstein is responsible for the violations of his companies. *See 2nd Amend. Guns, LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 1:13-CV-01947-CL, 2014 WL 7051753, at *7 (D. Or. Dec. 12, 2014) ("[company's] acts are reasonably imputed to its officers and vice versa . . . . [A]ll

---

[7] At the administrative hearing, ATF introduced as an exhibit an addendum to the 2011 Firearms International Report of Violations, listing firearms that the company could not account for during the 2010 inspection but failed to report as missing after being instructed to do so by ATF investigators. ROA.1468-60, 1471, 1506; ROA.2770 (testimony). The addendum further noted that "[o]n December 7, 2010, the licensee was instructed to report 2 firearms missing[;] [o]n February 7, 2011, the licensee was instructed to report another 105 firearms missing; [and] [a]s of February 2, 2011, these firearms have not been submitted on an ATF Form 3310.11." ROA.1468, 1506.

'responsible persons' named on [company's] license are personally accountable for those violations."); *Fin & Feather Sport Shop, Inc.*, 481 F. Supp. at 805-06 (licensee and corporate officer were accountable for recordkeeping errors of store manager); *McLemore v. United States Treasury Dep't*, 317 F. Supp. 1077, 1079 (N.D. Fla. 1970) (FFL licensee and company owner responsible for violations of the GCA committed by agents and employees). Aronstein and his companies thus violated the GCA by failing to report missing firearms as required. Based on any one of the extensive GCA violations discussed above, ATF's denial of Crusader's FFL should be affirmed.

## II. Crusader was not denied due process in the underlying administrative proceedings.[8]

Crusader alleges Fifth and Fourteenth Amendment due process violations because ATF DIO James issued the initial Notice to Deny, issued the Final Notice of Denial and presided over Crusader's administrative hearing. Appellant's Br. at 24-29. Crusader contends that this process resulted in an unfair hearing because DIO James served as both investigator and hearing officer, and because Crusader alleges,

---

[8] This subsection addresses Issues 2 and 3 in Appellant's Brief.

without support, that DIO James had a "pecuniary interest" in the outcome of the proceedings. *See id.*

Courts have consistently recognized that ATF's notice process and hearing procedures comport with due process. *See, e.g., Armament Servs. Int'l, Inc. v. Yates*, No. CV 17-MC-10, 2017 WL 5886048, at *8 (E.D. Pa. Nov. 27, 2017), aff'd sub nom. *Armament Servs. Int'l Inc. v. Att'y Gen. United States*, 760 F. App'x 114 (3d Cir. 2019) (internal citations omitted); *Shaffer v. Holder*, No. 1:09-0030, 2010 WL 1408829, at *15 (M.D. Tenn. Mar. 30, 2010); *Fulkerson v. Sessions*, No. 17-5874, 2018 WL 3726278, at *3 (6th Cir. Mar. 23, 2018). In particular, due process is satisfied where licensees or license applicants receive notice of violations, have an opportunity to be heard, have the chance to present evidence and challenge the government's evidence, and have the right to seek *de novo* review in federal court. *See Armament Servs. Int'l*, 2017 WL 5886048, at *8.

Here, Crusader undisputedly received written notice of the reasons for the license denial (ROA.1329-37), requested a hearing to challenge the denial (ROA.1340), received copies of ATF's evidence in advance of the hearing (ROA.1341-42), appeared at the hearing with counsel and

was invited to present its own evidence (ROA.1332), and was given the opportunity to challenge ATF's documentary exhibits and cross-examine ATF's witnesses (ROA.1332-33). Notably, Crusader presented no evidence or testimony at the hearing, opting only to cross-examine ATF's witnesses. Crusader's due process rights were met by these procedures.

DIO James' role in the administrative process likewise did not deprive Crusader of due process. In the federal firearms licensing context, courts have found "the combination of investigative and adjudicative functions . . . satisfy constitutional requirements." *Fulkerson*, 2018 WL 3726278, at *3-4 (affirming dismissal of due process claim alleging that DIO was not neutral arbiter); *Harrison v. U.S. ex rel. Dep't of Treasury*, No. CIV-04-100-SPS, 2006 WL 3257401, at *11 (E.D. Okla. Nov. 9, 2006) (in ATF's revocation of FFL, "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation") (quoting *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)); *DiMartino v. Buckles*, 129 F. Supp. 2d 824, 832 (D. Md. 2001), *aff'd DiMartino v. Buckley*, 19 F. App'x 114, 116 (4th Cir. 2001) (same). Moreover, Crusader only partially quoted 75 Fed. Reg. 48362-02 and omitted the language allowing for the combination seen here: "To

ensure impartiality, the hearing officer will generally be appointed from outside the applicant's/licensee's division; however, if staffing and resource issues demand, a hearing officer from within the applicant's/licensee's division may be assigned." Hearing Procedures Relating to Federal Firearms Licenses, 75 Feg. Reg. 48362-02, 48364 (August 10, 2010).

Crusader provides no evidence or even factual allegations to support the allegation that DIO James "has a pecuniary interest in the outcome of the administrative hearing." *See* Appellant's Br. at 28-29. Crusader has therefore shown nothing that creates a fact issue regarding the constitutionality of ATF's investigatory and adjudicative proceeding.

Crusader further argues that its due process rights were violated because ATF refused to provide what Crusader believes are exculpatory documents. Appellant's Br. at 8. Crusader makes a passing reference to FOIA but does not substantively address this claim. *See Curry v. Strain*, 262 F. App'x 650, 652 (5th Cir. 2008) (a party waives an issue if he fails to adequately brief it); Fed. R. App. P. 28(a)(8)(A) (appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). To the

extent Crusader is arguing a FOIA claim, both at the district court and on appeal, Crusader has not identified what documents were purportedly withheld by ATF. Accordingly, the district found the following as to the Parties' discovery motions:

> The administrative record in this case is voluminous, replete with reports and records. When Crusader requested ATF's investigative report [in discovery], ATF produced it with limited redactions and a *Vaughn* index explaining the applicable exemptions. Indeed, no other documents have been identified as responsive and undisclosed. It is therefore unclear exactly what documentation Crusader still desires.

ROA.1298.

Moreover, the administrative record is approximately 1,500 pages, and the documents relied upon to support the alleged GCA violations were authenticated and explained by testimony from witnesses with personal knowledge in the administrative hearing transcript. *See* ROA.2610-2810. Only one of the thousands of alleged GCA violations is needed to authorize ATF's denial of the FFL application. *See, e.g.*, *Gilbert*, 481 F. at 53. Crusader has failed to allege, much less create a fact issue as to, a viable FOIA claim, and has not shown how the extensive administrative record lacks sufficient evidence to support ATF's denial of Crusader's FFL.

## III. Crusader's hearsay exhibit does not create a fact issue.

Crusader's only evidence purporting to rebut the administrative record's documentation of thousands of violations of the GCA is a document allegedly created by Allan Offringa, a purported retired senior ATF special agent. The so-called "Offringa Critique" does not create a genuine issue of material fact. Crusader does not allege that Offringa was present at the ATF inspection, a witness at the administrative hearing, or otherwise had any personal knowledge of the relevant events other than reading ATF's Notice of Licensee Revocation. This document is not competent evidence of any material fact; instead, Crusader is essentially offering an improper expert report without complying with Fed. R. Civ. P. 26. Offringa's thoughts and reflections upon ATF's investigation do not create an issue of material fact.

## CONCLUSION

For the forgoing reasons, the district court rejected Aronstein's attempt to circumvent the revocation of his former FFL by applying for a new license for his newly created company. The overwhelming weight of the law does not allow for such an end run around federal firearms laws and regulations, and Crusader, with Aronstein as its sole responsible

person, is not eligible to receive a federal firearms license. Accordingly, the judgment of the district court should be affirmed.

Respectfully submitted,

Alamdar S. Hamdani
United States Attorney

/s/ Myra Siddiqui
Myra Siddiqui
Assistant United States Attorney
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9600
myra.siddiqui@usdoj.gov

Jennie Basile, Division Counsel
Rowena Santiago, Senior Attorney
Peter Mickelson, Senior Attorney
Bureau of Alcohol, Tobacco,
Firearms and Explosives

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I certify that on January 26, 2024, the foregoing was filed and served on Plaintiff-Appellant and counsel of record through the Court's CM/ECF system and transmitted to the Clerk of the Court.

I further certify that, pursuant to Fifth Circuit Rule 31.1, counsel for Appellant has agreed in writing to waive service of paper copies of this brief and to be served with an electronic copy only.

/s/ *Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, this document contains 8,476 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

*/s/ Myra Siddiqui*

Myra Siddiqui
Assistant United States Attorney
Date: January 26, 2024