# No. 23-20449

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CRUSADER GUN GROUP, L.L.C.,
PLAINTIFF – APPELLANT

v.

TANARRA JAMES, DIRECTOR OF INDUSTRY OPERATIONS OF THE
HOUSTON FIELD DIVISION OF THE BUREAU OF ALCOHOL AND
TOBACCO FIREARMS AND EXPLOSIVES "ATF",
DEFENDANT – APPELLEE

On Appeal from the United States District Court
For the Southern District of Texas, Houston Division,
No. 4:22-cv-0906

## APPELLANT CRUSADER GUN GROUP, L.L.C.'S REPLY BRIEF

Respectfully Submitted

/s/ Gaynell Paul Matherne
Gaynell Paul. Matherne
Texas Bar No. 13186300
P.O. Box 547
Spring, Texas  77388
Telephone: (713) 253-0674
Facsimile: (281) 353-2651
Email legistgpm@icloud.com
**Attorney for Appellant
Crusader Gun Group, L.L.C .**

# TABLE OF CONTENTS

Table of Contents...............................................................ii

Table of Authorities.........................................................iii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................1

SUMMARY OF ARGUMENT................................................................1

ARGUMENT

1.  Whether the district court correctly determined that
    ATF was authorized to deny Crusader's application for a
    federal firearms license ("FFL") based on willful violations
    of the Gun Control Act ("GCA") attributable to Crusader's
    president and sole responsible person, Alan Aronstein.
    (Response to Appellant's Issues  1, 4-7)..................................3

2.  Whether the district court correctly determined that ATF
    was authorized to deny Crusader's application for a federal
    firearms license ("FFL") based on willful violations of the
    Gun Control Act ("GCA") attributable to Crusader's ...
    president and sole responsible person, Alan Aronstein.
    (Response to Appellant's Issues  2-3)  .................................16

CONCLUCION.......................................................................19

CERTIFICATE OF SERVICE...........................................................20

CERTIFICATE OF COMPLIANCE........................................................21

ECF CERTIFICATIONS...............................................................22

# TABLE OF AUTHORITIES

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120, 161 (2000)............................................................6, 12

*MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665,
 672 (N.D. W. Va. 2014), aff'd, 594 F. App'x 143
(4th Cir. 2015)...................................................................................7

*Screws v. United States*, 325 U.S. 91, 101,
65 S.Ct. 1031 1035, 89 L.Ed. 1496...............................................13

*Texas v. United States*, 497 F.3d 491, 504 (5th Cir. 2007).............12

*Utility Air Regulatory Group v Environmental Protection
/agency*, 134 S.Ct. 2427 (2014), 573 U.S. 302................................5

*VanDerStok v Garland,* 86 F. 4th 179.........................5, 6. 10, 12, 17

*West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2614...............5

STATUTES

Administrative Procedure Act (APA) (5 U.S.C. 554)..................16, 17

The Gun Control Act of 1968 (GCA)      1, 2. 3, 4, 6, 7, 8, 10, 11, 12,
13, 15, 16, 17

18 U.S.C. Chapter 40............................................................4, 6, 11

18 U.S.C. Chapter 44........................................................................5

18 U.S.C. § 841(s)........................................................................4, 6

18 U.S.C. §§ 841-848.......................................................................6

18 U.S.C. § 922(g)......................................................................4, 5, 9

18 U.S.C. § 922(n)......................................................................4, 5, 9

18 U.S.C. § 923(d)(A-G)............................................................6, 8, 9

18 U.S.C. 923(d)(1).........................................................................7

18 U.S.C. 923(d)(1)(A)................................................................8

18 U.S.C. 923(d)(1)(B)................................................................8

18 U.S.C. 923(d)(1) (C)...............................................................8

49 U.S.C. § 578.8(b)(2),.............................................................11

CODE OF FEDERAL REGULATIONS

27 CFR, 478.......................................................................4, 5

27 CFR § 478.92..............................................................14, 15

27 CFR § 478.123(a)..........................................................14, 15

27 CFR. § 555.11.............................................................14, 15

FEDERAL REGISTER

FR 75 48362 (August 10, 2010)....................................................16

FR 88 61993 (September 8, 2023)................................................4, 5

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1. Whether the district court correctly determined that ATF was authorized to deny Crusader's application for a federal firearms license ("FFL") based on willful violations of the Gun Control Act ("GCA") attributable to Crusader's president and sole responsible person, Alan Aronstein.  (Appellee's Issues , 1, 4-7)

2. Whether the district court correctly rejected Crusader's constitutional claims that ATF failed to provide a fair administrative hearing and failed to produce alleged and unidentified exculpatory documents.  (Appellee's Issues 2-3)

**SUMMARY OF ARGUMENT**

The denial of Crusader's FFL by the ATF is a wrongful act that should be set aside. While under certain circumstances the ATF may deny a FFL to a corporate applicant, there are no perceived facts that justifies the denial of a FFL to Crusader. Consequently, every factual conclusion upon which the ATF justifies Crusader's denial are wrongful for the reasons set forth in this summary.

Alan Aronstein is not a willful violator of the GCA. Alleged willful violations of a corporation cannot be imputed to the corporate

1

representative nor are the alleged willful violations by a corporation attributable to the corporate representative.

The ATF is either relying on old case law to support its position or is engaging in the law making power without clear congressional authorization when it continually uses the term "responsible person" to justify its decisions. The ATF's actions are wrongful when imputing willful GCA violations by a corporate license holder to a corporate representative by asserting that the alleged violations are attributable to a corporate representative. Neither the GCA nor congress grants this authority to the ATF.

The Congress has not defined the term willful in the GCA. Therefore, when deciding to renew, revoke or deny a FFL to applicant, the ATF must follow the definition of willful as reported by the Supreme Court in its final decision. Hence, the alleged booking keeping errors were not willful and if they were it was wrongful to impute or attribute them to Aronstein.

The presence of the machine guns did not violate the GCA because the government contract removed them from ATF's jurisdiction. Likewise, because the frames were not manufactured

nor imported by the license holder corporations or Aronstein, the presence of those un-serialized frames did not violate any provision of the GCA. And lastly, Crusader's due process rights were denied because James failed to prove the basis upon which she legitimately presided over the hearing to deny Crusader's FFL or the basis to conduct the hearing in violating the clear and unambiguous terms of the hearing process that was adopted by the ATF as reported in the Federal Register. Furthermore, it was an abuse of discretion when the District court stayed discovery in this case.

## ARGUMENT

### I.    It was wrongful for the ATF to deny Crusader's license application because Aronstein was not a willful violator of the GCA.

A. While the ATF may deny a FFL to an appellant if the applicant is an individual who has previously willfully violated the GCA, it is wrongful to deny the application for a FFL if the applicant is a corporation that has never willfully violated the GCA and the corporate representative is not prohibited from transporting, shipping, or receiving firearms or ammunition in

commerce under section § 922(g) and (n) of this chapter

The Code of Federal Regulations upon which the ATF's has determined willful findings must comply with clear congressional authority when formulating the rules and must not be exercising Law Making Power.

i. The recent case law does not support ATF's position

The case law upon which the ATF relies has been overwhelmingly overruled by the Supreme Court and several circuit courts that includes the 5th Circuit. Crusader will briefly repeat its objection to the term "Responsible Person"

The term "Responsible Person" is not defined in 18 U.S.C. 44 (the GCA) nor in 27 CFR part 478. Rather the ATF in 88 Fed. Reg. 61993 (September 8, 2023) proposed to amend 27 CFR 978 by adding the definition of "Responsible Person.

The ATF has boot strapped this definition from 18 U.S.C. Chapter 40 and 27 CFR 555.11 when it proposes to amend 27 CFR Part 478 by adopting the definition of "Responsible Person" as defined in 18 U.S.C. § 841(s) and further defined in 27 CFR part 555.11 which includes partners, sole proprietors, site managers, corporate

officers and directors, and majority shareholders" but does not include every person excepting the janitor as proposed by the ATF in 88 Fed. Reg. 61933(September 8, 2023).

Rather the corporate representative's statutory unambiguous definition is set forth in 18 U.S.C. §923(d)(1)(b). Hence, the only licensing criteria that a corporation representatives must satisfy is that the corporate representative must be qualified under 18 U.S.C. 923(d)(1)(b)[1].

Unquestionably, the ATF does not have "law making" power to amend an unambiguous statue such as 18 U.S.C. Chapter 44 to create such a definition in 27 CFR part 478. See *VanDerStok v Garland* 86 F. 4th 179   quoting *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2614 (2022) (quoting *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014))

It is also significant that Congress did not define nor mention

---

[1] 18 U.S.C. 923(d)(1)(b) provides: "the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section § 922(g) and (n) of this chapter;

the term "responsible person" when enacting the GCA in 1968 but did so when enacting Public Law 91-452, October 15, 1970 now known as the Regulation of Explosives under Chapter 40. Importation, Manufacture, Distribution and Storage of Explosive Materials 18 U.S.C. §§ 841-848. See 18 U.S.C. 841(s) and 27 CFR. 555.11.

Furthermore, "an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." *VanDerStok,* 86 F. 4th at 185 quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).

"Where the statutory text does not support ATF's proposed alterations, ATF cannot step into Congress's shoes and rewrite its words, regardless of the good intentions that spurred ATF to act." *VanDerStok,* 86 F. 4th at 195

Contraire to ATF's argument that Crusader has not found a single case in which the ATF cannot impute willful violations of a company to the corporate representative, the ATF has not found a single provision in the GCA that gives the ATF clear congressional

6

authority or law making power to impute an alleged willful violation of a corporation to the corporate representative.

  ii. Crusader's interpretation does not contradict principles of statutory interpretation or lead to absurd results.

The ATF when advancing their argument continually relies upon the term "Responsible person". There being no such term in the GCA, ATF's arguments fails upon this ground.

The ATF citing *MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 672 (N.D. W. Va. 2014), aff'd, 594 F. App'x 143 (4th Cir. 2015) argues that "[a]n equally reasonable construction of Section 923(d)(1) is that Congress defined the term 'applicant' by including the parenthetical language in the statute's first mention of 'applicant' which addressed the issue of corporate entities, and thereafter intended to rely upon the same meaning for the defined term."). Thus, in delineating all the qualifications for GCA licensure in section 923(d)(1), Congress intended the requirements for an "applicant" to apply to individuals who control corporations and similar entities seeking FFLs."

Nevertheless, the statutory language for issuing a FFL is

controlled by 18 U.S.C. 923(d)(1)(A-G)  In particular, (1)  18 U.S.C. 923(d)(1)(A) the applicant is twenty-one years of age or over; (The applicant was Crusader) (2) 18 U.S.C. 923(d)(1)(B) ) the applicant (i.e. Crusader) (including, in the case of a corporation, partnership, or association, any individual (Aronstein) possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (n) of this chapter;. (3) 18 U.S.C. 923(d)(1) (C) the applicant (Crusader) has not willfully violated any of the provisions of this chapter or regulations issued thereunder. Hence, there is no contemplation power nor parenthetical language in the GCA whereby the ATF can lawfully impute a willful violation of a corporation to its corporate representative.

Furthermore, every section in 18 U.S.C. 923(d)(1)(A-G) starts with words "the applicant" and in section B , (it) encompasses an individual "possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the

8

corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (n) of this chapter;"

Consequently, there is no langrage in 18 U.S.C. 923(d)(1)(A-G) that gives the ATF the power to impute the alleged violations of a corporation to an individual "possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association. And, James on behalf of the ATF, has not and can not point to a single phrase that does so.

Without question, the ATF relying upon the foregoing is a loophole to impute the violations of a corporation to an individual "possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association). This appears to be a practice that has for the first time being challenged by Crusader.

The ATF argues that there is no language in subsection (g) and (n) that indicates that these are meant to be the exclusive requirement for obtaining a FFL. On the other hand, upon which

9

section of the GCA does the ATF "contemplate" or find "parenthetical language" that delineates the "other criteria" that can be relied upon by the ATF to expand the eligibility requirements for a corporate applicant's representative. Apparently there are none because the ATF fails to point to a single section to support its argument.

Nevertheless, "loopholes" in the law must be filled by Congress, not by ATF, and not by this Court. (or any court for that matter) ("Perhaps Congress's choice of words was prudent, or perhaps it was not. That is not for us to decide."). *VanDerStok,* 86 F. 4th at 195

Furthermore, redefining the applicant to incorporate "responsible person" is not a task for the ATF. "It is not the province of an executive agency to write laws for our nation. That vital duty, for better or for worse, lies solely with the legislature. Only Congress may make the deliberate and reasoned decision to enact new or modified legislation regarding firearms based on the important policy concerns put forth by ATF and the various amici here. But unless and until Congress so acts to expand or alter the language of the Gun Control Act, ATF must operate within the statutory text's existing limits. *VanDerStok,* 86 F. 4th at 197

B. ˋA corporate representative is not the scape goat for a corporation's violations of the GCA

The sole rhetorical question under this section is, does the ATF have clear congressional authority to impute or "attribute" the violations of a corporation to the corporate representative and if it is done so, has the ATF engaged in "law making" power.

James lingers her argument in this section by relying upon the nonexistent term "Responsible Person" and endlessly imputes or "attributes" the alleged violations of three corporations to Aronstein. James' fails to refer to a single section of the GCA upon which she can lawfully contemplate or find parenthetical language that justifies this practice.

Referring to Appellant's Brief, Congress has enacted statutes that define the term "imputed"[2] in its specific language such as 49 U.S.C. § 578.8(b)(2). Neither the GCA nor 18 U.S.C. Chapter 40 contain such language. "However, the fact that later-arising circumstances cause a statute not to function as Congress intended

---

[2] However the word "attributable" is not.

does not expand the congressionally-mandated, narrow scope of the agency's power." *Texas v. United States*, 497 F.3d 491, 504 (5th Cir. 2007). Likewise, "an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). "Where the statutory text does not support ATF's proposed alterations, ATF cannot step into Congress's shoes and rewrite its words, regardless of the good intentions that spurred ATF to act." *VanDerStok,* 86 F. 4th at 195

 C. It matters not that Tex-Products, High Standard Manufacturing or Firearms International may have violated the GCA, the alleged violations were not willful as defined by the Supreme Court.

"The primary method by which the GCA ensures that the manufacture and sale of firearms are regulated as intended is through the imposition of criminal penalties. *VanDerStok,* 86 F. 4th at 183. James admits in the Introduction of her brief, "A single willful violation of the GCA is sufficient to authorize the denial of a FFL application..."

Therefore, Crusader has accurately relied upon the Supreme

12

Court case interpreting the term "Willful". While "willful" may have many meanings, the interpretation of the word "Willful" by the Supreme Court in *Screws v. United States*, 325 U.S. 91, 101, 65 S.Ct. 1031 1035, 89 L.Ed. 1496 in the context of the GCA is controlling unless a later decision by the Supreme Court over rules its interpretation or congress revises the GCA to define willful. It is immaterial how later courts have decided regarding conducts that is "Willful" in GCA matters. Apparently, Crusader is the first to uncover this critical interpretation of Willful. The interpretation of Willful by the Supreme Court in Screws is final.  However, the Supreme Court itself can revisit a case and overturn its previous decision. An example would --be the Supreme Court deciding Roe v Wade in 1973 but revisiting the case and reversing its decision in 2022. Such a review has not occurred since the original decision Screws became final.

   i. Recordkeeping errors

   There is not a scintilla of evidence in the administrative recorded that the alleged hundreds of violations alleged in the record were "willfully" committed by the three entities involved. See

(ROA.2610-2813)

(1) James continues to misidentify the pistol frames by stating that the three companies failedoff to record the acquisition of approximately 2400 pistol frames. 27 CFR § 478.92 and not 27 CFR § 478.123(a) requires that a manufacturer or importer must legibly identify each firearm manufactured or imported. None of the three companies involved were manufactures or impostors of the pistol frames in question. See Appellant's Brief page 32 through 35 for a more detailed rebuke of this accusation.

(2-6) The alleged record keeping errors attributed to the three companies were soundly rebutted by the declaration of Allan Offringa. See Appellant's Brief page 17

Furthermore, the alleged recordkeeping errors were imputed to Aronstein, which is wrongful. See Section B Appellant's Reply Brief pages 14.

ii. Possession of Machineguns was lawful.

This issue was amply covered in Appellant's Brief section VI pages 36-40. The issue in not whether or not a government contract

14

was cancelled. It matters not what is recorded in the acquisitions and depositions record. The issue here is, was there a valid government contract regarding the makeover of a M16 to a M4 machine gun. The fact that there was a valid written governmental contract regarding the machine guns results in no ATF jurisdiction over those weapons. No jurisdiction equates to no violations of the GCA.

> iii.    Firearms Frames are not required to be serialized unless manufactured or imported.

James continues to misidentify the provisions of the GCA where a manufacturer or importer of a firearm frame must so serialize.

This issue was adequately covered in Appellant's Brief section V pages 32-35 and will be briefly covered here. Neither Tex-Products Inc., High Standard Manufacturing Company, Inc., Firearms International, Inc. nor Aronstein were manufacturers of those frames. Neither Tex-Products Inc., High Standard Manufacturing Company, Inc., Firearms International, Inc. nor Aronstein were importers of those frames. 27 CFR § 478.92 and not 27 CFR § 478.123(a) requires that a manufacturer or importer must legibly identify each firearm manufactured or imported. Therefore, possessing those un-serialized by Tex-Products Inc., High Standard

Manufacturing Company, Inc., Firearms International, Inc. or Aronstein did not violate any provision of the GCA. In addition, there was no evidence that any of those frames were recorded in the Acquisitions and depositions book of any of the three companies. Hence, the frames were not in the firearm inventory of any of the three companies.

iv Firearms missing reports.

This issue is covered in Appellant's Brief section VII pages 40 - 41. Imputing those alleged violations to Aronstein is wrongful as heretofore set forth in sections I(A)(ii-iii) &1(B)

## II.  Crusader was denied due process in the underlying administrative proceedings

This issue was covered in Appellant's Brief in Issue II and III pages 18-27

i.  James does not explain under what authority she relied upon to preside over the hearing or to exempt the hearing from the Administrative Procedures Act.

Specifically, "To ensure impartiality, the hearing officer will generally be appointed from outside the applicant's/licensee's division." Fed. Reg. 75 (August 10, 2010) at 48362 James did not address this limitation in Appellee's Brief. Nor does she explain where

in the GCA does give the ATF the law making power or parenthetical language that allows her to exclude an ATF hearing from the Administrative Procedures Act. This is yet another example where the ATF has engaged in a law making power, a power that lies solely with the legislative branch. *VanDerStok,* 86 F. 4th at 182.

> ii.    Appellant Brief adequately addressed Crusader's due process issues.

Crusader's denial of its application for a FFL was based upon the 2010 compliance inspection of three companies where he was an officer. (ROA.2572-77). This event occurred some ten years prior to the hearing denying Crusader's Application. See Appellant's Brief pages 32-27. Due to the time period between the date of the compliance inspection and the hearing, the only source of the exculpatory documents was the ATF. Consequently, it was an abuse of discretion for the court to deny the discovery after Crusader's FOIA was denied by the DOJ. (ROA.773-989).

Furthermore, it was an abuse of discretions for the court to ignore Crusader's motion to strike the exhibits James' Motion for Summary Judgment because they were not properly authenticated. Additionally, it was impossible to obtain a hearing on any matter

before this court. A review of the record will show that Crusader attempted on numerous occasions to obtain a hearing without success on one or more matters. The case manager for this court does not have an office at the court house on Rusk Street nor would she respond to email or telephone requests. It is obvious that the district court took the easy route by granting James' motion for summary judgment without seriously considering Crusader's response.

### iii   Offringa's Declaration Tends to Prove Crusader's Due Process Rights Were Denied Justifying Reversal

James is again attempting to mislead this court by claiming that Offringa's declaration is hearsay. Offringa's declaration was the report of his review of the actual compliance inspections that was issued to (a) Tex-Products Inc., (b) High Standard Manufacturing Company, Inc. and (c) Firearms International, Inc. (ROA.1209-1226) These document(s), in the possession of the ATF, were not among the exhibits introduced at the hearing to deny Crusader's FFL.

However, a copy of each compliance inspection report was requested (ROA.604-632) and withheld when the Court stayed discovery. (ROA.991) Offringa's critique of the compliance inspection(s) was also forwarded to the ATF. Crusader specifically

requested a copy Offringa's critique in its production request (ROA.604-632) which was withheld when the court stayed discovery. (ROA.991)

Contraire to James' opinion, Offringa's review upon ATF's compliance inspection concerning (a) Tex-Products Inc., (b) High Standard Manufacturing Company, Inc. and (c) Firearms International, Inc. does tend to prove Crusader's due process rights were violated by the ATF therefor justifying reversal along with instructions for the District Court to Order the ATF to approve and grant Crusader's Application for a FFL.

### CONCLUSION

For the foregoing reasons, along with Appellant's reasons set forth in its Opening brief, Appellant, Crusader Gun Group, L.L.C. asks this Court to reverse the district court judgment and remand the case with instructions to order that the ATF issue a Federal Firearms License to Crusader Gun Group, L.L.C. and for further proceedings consistent with the Court's option.

Respectfully Submitted

/s/Gaynell Paul Matherne

Gaynell Paul Matherne
PO Box 547
Spring, Texas 77383-0547
TBA 13186300
(713) 253-0674
(281) 353-2651 FAX
E-mail legistgpm@icloud.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024 a true and correct copy of the foregoing Appellants Reply Brief for Crusader Gun Group, L.L.C. was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/Gaynell Paul Matherne___
Gaynell Paul Matherne

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 3497 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and Cir. R. 32.1 and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2010 in Bookman Old Style using 14 point font for body text and 12 point font for footnotes.

*/s/ Gaynell Paul Matherne*
Gaynell Paul Matherne

ECF CERTIFICATIONS

In connection with the electronic filing of this document, I hereby certify that: (1) all required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Gaynell Paul Matherne*_____
Gaynell Paul Matherne