United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 30, 2024
Lyle W. Cayce
Clerk

No. 23-20449

Crusader Gun Group, L.L.C.,

*Plaintiff—Appellant*,

versus

Tanarra James, *Director of Industry Operations of the Houston Field Division of the Bureau of Alcohol, Tobacco, Firearms, and Explosives*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-906

Before Southwick and Duncan, *Circuit Judges*, and Kernodle, *District Judge*.[*]

Jeremy D. Kernodle, *District Judge*:

Crusader Gun Group, L.L.C. applied for a Federal Firearms License ("FFL"). The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") denied the application because Crusader's president and sole responsible person has a history of willfully violating federal firearms laws

---

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

and regulations. Crusader petitioned for review in the district court, which affirmed ATF's decision. We agree with the district court's analysis and AFFIRM.

**I.**

In November 2020, Crusader filed an Application for an FFL pursuant to the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921–934. In the application, Alan Aronstein identified himself as Crusader's president and the "responsible person" for its retail firearms business. Aronstein noted that he had previously been a responsible person for a federal firearms licensee and had served as an officer in a corporation holding an FFL.

In reviewing the application, ATF determined that Aronstein was in fact the same responsible person for three other federal firearms licensees no longer in business: Tex-Products, Inc.; High Standard Manufacturing Co., Inc.; and Firearms International, Inc. ATF also determined that these entities had violated federal firearms laws and regulations on numerous occasions, including more than 6,000 recordkeeping violations, failure to report the theft or loss of more than 200 firearms, failure to serialize 2,400 firearm frames, and the possession of unlawful machineguns. Indeed, in 2011, based on these inspections and the numerous warnings given to Aronstein, ATF had issued a Notice of Revocation of License to Tex-Products. All three companies owned by Aronstein surrendered their FFLs to ATF before a hearing on the notice was held.

Accordingly, on April 27, 2021, ATF issued a Notice to Deny Application for License to Crusader. Crusader requested a hearing under 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74. At the hearing, ATF presented evidence to support its findings. Crusader's attorney, along with Aronstein, was present, and although Crusader presented no evidence, its counsel cross-examined ATF's witnesses.

On January 13, 2022, ATF issued a Final Notice of Denial, denying Crusader's application under 18 U.S.C. § 923(d)(1)(C) and 27 C.F.R. § 478.47(b)(3). The Final Notice included ATF's findings and conclusions, stating that Aronstein was the sole responsible person for other federal firearms licensees that willfully violated the GCA, was knowledgeable regarding firearms laws yet disregarded them, signed reports of violations by these licensees, and previously violated the GCA by unlawfully possessing machineguns and unserialized frames and by failing to report the theft or loss of missing firearms.

Crusader then petitioned for judicial review pursuant to 18 U.S.C. § 923(f)(3). On cross-motions for summary judgment, the district court concluded that ATF's denial of Crusader's application was authorized by law, granted ATF's summary judgment motion, and denied Crusader's cross-motion.

This appeal followed.

## II.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 360 (5th Cir. 2017).

"Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Here, ATF was entitled to summary judgment if, after "de novo judicial review," the district court determined that ATF was "authorized to deny [Crusader's] application." 18 U.S.C. § 923(f)(3); *see Fairmont Cash*

*Mgmt.*, 858 F.3d at 360 ("Unlike in other cases in which we take appeal from administrative action, we are instructed to provide 'de novo judicial review' of the ATF's revocation decision." (quoting 18 U.S.C. § 923(f)(3))). "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Fairmont Cash Mgmt.*, 858 F.3d at 360 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).

We review discovery rulings for abuse of discretion. *Id.* (citing *Duke v. Univ. of Tex. at El Paso*, 729 F.2d 994, 995 (5th Cir. 1984)).

### III.

Crusader raises three primary arguments on appeal. First, Crusader argues that ATF unlawfully denied its application based on violations of the law attributed to its president and sole responsible person, Alan Aronstein. Second, Crusader argues that it was denied due process in the underlying administrative proceeding. Third, Crusader objects to the district court's stay of discovery below. We address each argument in turn.

### A.

Crusader claims that no statute authorizes ATF to deny its FFL application based on prior violations attributed to its owner and responsible person. We disagree.

Title 18 U.S.C. § 923(d)(1) provides in relevant part:

Any application submitted under subsection (a) or (b) of this section shall be approved if—

(A)　the applicant is twenty-one years of age or over;

(B)　the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the

management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (n) of this chapter;

(C)   the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;

(D)   the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application; [and]

(E)   the applicant has in a State (i) premises from which he conducts business subject to license under this chapter . . . .

As noted, the term "applicant" in the case of an entity like Crusader is defined to include the "individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the [entity]." *Id.* § 923(d)(1)(B). ATF calls this the "responsible person," which it defines as "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of [the] corporation, partnership, or association, insofar as they pertain to firearms." *See Gossard v. Fronczak*, 206 F. Supp. 3d 1053, 1061 (D. Md. 2016). Thus, by the terms of § 923(d)(1)(C), ATF is authorized to reject the application of an entity like Crusader if the individual managing and directing the entity—the "responsible person"—has willfully violated federal firearms laws. Indeed, every circuit court to have considered the question agrees with this interpretation. *See, e.g.*, *Barany v. Van Haelst*, 459 F. App'x 587, 588 (9th Cir. 2011) (applying the requirement in § 923(d)(1)(C) to the entity's responsible person); *Lortz, Ltd. v. Gilbert*, 451 F. App'x 503, 504 (6th Cir. 2011) (construing § 923(d)(1)(C) in harmony with § 923(d)(1)(B) by interpreting "applicant" to include, in the case of an

entity, "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation").

Crusader argues that "applicant" in § 923(d)(1)(C) has a different meaning than in the other provisions of § 923(d)(1). Crusader claims that "applicant" in (d)(1)(C) means only the entity applying for the license—here, Crusader Gun Group, L.L.C., not its responsible person Alan Aronstein. But Aronstein's own actions undermine this argument because he identified himself, not Crusader Gun Group, as the "applicant" in Crusader's FFL application. Nonetheless, Crusader argues that because it never violated any firearms laws, ATF was required to issue Crusader an FFL.

Crusader misreads the statute. A defined term is presumed to have "the same meaning" throughout "the same act." *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text . . . ." (citing *Atl. Cleaners & Dyers*, 286 U.S. at 433)). Nothing in § 923(d)(1) overcomes this presumption. Rather, other subsections of (d)(1) confirm it: (d)(1)(A) requires the "applicant" to be at least twenty-one years old, which is most reasonably read to apply to an individual, not an entity; and (d)(1)(D) and (d)(1)(E) use the pronoun "his" and "he" to refer to the applicant, suggesting an individual, not an entity. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (construing identical phrases in two provisions of a statute to have the same meaning where context supported such a construction and no support was offered for the "unlikely proposition" that Congress intended the alternative); *MEW Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 673 (N.D. W. Va. 2014) ("It is inconceivable that Congress premised the approval of a corporation's FFL application on a corporate existence of twenty-one years."), *aff'd*, 594 F. App'x 143 (4th Cir. 2015).

No. 23-20449

Crusader claims that the use of the parenthetical to define "applicant" only in (d)(1)(B) necessarily means that Congress did not intend the parenthetical to define "applicant" in the other provisions of (d)(1). But the parenthetical appears in (d)(1)(B) because that is the first provision that applies to business entities. And nothing in the statute indicates that Congress intended to limit the application of the parenthetical to that provision. Indeed, as courts have explained in rejecting Crusader's interpretation, "Congress defined the term 'applicant' by including the parenthetical language in the statute's first mention of 'applicant' which addressed the issue of corporate entities, and thereafter intended to rely upon the same meaning for the defined term." *E.g.*, *id.* at 672 (quoting *XVP Sports, LLC v. Bangs*, No. 2:11-cv-379, 2012 WL 4329263, at *8 (E.D. Va. Mar. 21, 2012)). This is the only natural reading when viewing (d)(1) as a whole.[1] *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

Crusader also argues that ATF erroneously imputed to Aronstein the numerous violations committed by Aronstein's other FFL-holding entities. But business entities operate through their officers. *See Moss v. Ole S. Real Est., Inc.*, 933 F.2d 1300, 1312 (5th Cir. 1991) ("It is well settled law that when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985))); *see also TNT Crane & Rigging, Inc. v. Occupational Safety &*

---

[1] In any event, even if we accepted Crusader's interpretation, Crusader fails to explain how it is entitled to an FFL given that it is not "twenty-one years of age or over." *See* 18 U.S.C. § 923(d)(1)(A).

*Health Rev. Comm'n*, 74 F.4th 347, 358 (5th Cir. 2023) (noting that a "corporation can only act through its agents" (quoting *W.G. Yates & Sons Constr. Co. v. OSHRC*, 459 F.3d 604, 607 (5th Cir. 2006))).

And Crusader does not dispute that Aronstein was the officer responsible for those entities. In fact, Aronstein repeatedly identified himself as the sole "responsible person" for the firearms operations of those entities. He signed "regulations checklists" affirming that the federal firearms laws were explained to him and agreed that he would comply with "ALL Federal firearms laws and regulations" on behalf of those entities. He represented that he was the entities' "Proprietor," and acknowledged receiving the "Reports of Violations" following ATF inspections of the entities. ATF thus properly determined that Aronstein violated the federal firearms laws. *See Gilbert v. Bangs*, 481 F. App'x 52, 54 (4th Cir. 2012) (denying an FFL application in part because the applicant willfully violated the GCA by "serving as the chief responsible person" of an entity that previously committed thousands of GCA violations).

Finally, Crusader argues that Aronstein's prior violations were not willful because he did not "voluntarily and intentionally" act with "specific intent" to violate the law.[2] We have previously held that "[a] license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements." *Fairmont Cash Mgmt.*, 858 F.3d at 362 (quoting *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 761 (S.D. Tex. 2007)). A violation, moreover, is willful "if the licensee has been informed of the regulations, warned of violations, and continually

---

[2] Crusader also disputes some of the violations. But the record is replete with evidence of unlawful possession of machineguns, failure to serialize firearm frames, and failure to report firearms as missing.

violates those requirements." *Id.* (quoting *Arwady*, 507 F. Supp. 2d at 761). And here, ATF presented substantial evidence that Aronstein was aware of the federal firearms laws and regulations and repeatedly disregarded or showed indifference to them. For example, ATF notified Aronstein of required corrective actions when it uncovered recordkeeping violations, Aronstein signed and acknowledged receipt of such notices, and yet ATF later found additional, identical recordkeeping violations. Thus, there is no doubt that Aronstein committed at least one, and likely more, willful violations. *See id.* at 363 (finding willfulness to be a "nigh inescapable" conclusion given the sheer volume of GCA violations under the supervision of an FFL veteran).

## B.

Crusader also argues that ATF violated its due process rights in rejecting its FFL application. Again, we disagree.

Crusader primarily complains that the same ATF official, Tanarra James, served as both "the investigative officer that issued the intent to deny Crusader's FFL license . . . and the hearing officer/judge at the administrative hearing." But James did not serve as the investigative officer for Crusader's application. In any event, ATF provided Crusader with adequate due process: written notice of the reasons for the denial, a hearing to challenge the denial, copies of ATF's evidence in advance of the hearing, and the opportunity to have legal representation and present evidence and cross-examine ATF's witnesses during the hearing. Crusader then exercised its statutory right to de novo judicial review in district court. Crusader's due process rights were not violated. *See Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (administrative procedures often comport with due process where there is notice, opportunity to be heard, and subsequent judicial review); *Weaver v. Harris*, 486 F. App'x 503, 506 (5th Cir. 2012) (finding no

No. 23-20449

due process violation with ATF's revocation procedures where the appellant failed to show the Due Process Clause mandates any additional procedures).

## C.

Crusader also challenges the district court's stay of discovery below. Once again, the district court did not err.

A district court considering a petition for review under § 923(f)(3) may consider evidence outside the administrative record yet "may enter judgment solely based upon the administrative record." *Fairmont Cash Mgmt.*, 858 F.3d at 364 (quoting *Arwady*, 507 F. Supp. 2d at 758). "[W]here discovery would not be useful to the resolution of a pending summary judgment motion presenting a question of law, it is not an abuse of discretion to grant such a motion [to stay discovery]." *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 870 (5th Cir. 2010). Here, Crusader does not identify the discovery it would have sought, other than complaining about ATF's denial of a FOIA request involving documents that were already in the record. Further, the administrative record in this case is robust, spanning almost 1500 pages. Accordingly, the district court did not abuse its discretion by deciding the summary judgment motions on the administrative record. *See Fairmont Cash Mgmt.*, 858 F.3d at 364; *Sapp*, 490 F. App'x at 870.

Crusader's remaining challenges regarding the admission of various exhibits are not adequately briefed and are therefore forfeited. *See Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023); Fed. R. App. P. 28(a)(8)(A) (stating that an appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

\* \* \*

For the reasons stated above, we AFFIRM.